# IN THE DISTRICT COURT OF THE UNITED STATES

## For the Western District of New York

---

| | |
|---|---|
| **THE UNITED STATES OF AMERICA** | **INFORMATION** |
| -vs- | **Violation:**<br>Title 18, United States Code,<br>Section 1349 |
| **ROBERT "BOBBY" CORRAO** | |
| | **22-CR-46-LJV** |

*FILED APR 20 2022 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY*

### INTRODUCTION

**The United States of America Charges That:**

1. At all times relevant to this Information:

   a. The Crescendo Lofts ("Crescendo Lofts") was a multi-family commercial and residential apartment complex located at 1502 Niagara Street, Buffalo, New York. Construction of Crescendo Lofts began in approximately January 2015 and was substantially complete by February 2017.

   b. 1502 Niagara, LLC ("1502 Niagara") was a limited liability company that owned Crescendo Lofts. 1502 Niagara built Crescendo Lofts with funds obtained through a construction loan.

   c. Individual 1 was the managing member, key principal, owner, and guarantor of 1502 Niagara.

   d. Defendant ROBERT "BOBBY" CORRAO was a principal, owner, and guarantor of 1502 Niagara.

   e. Aurora Capital Advisors, LLC, ("Aurora Capital") based in Buffalo, New York, was a commercial real estate firm engaged in the business of brokering loans for borrowers seeking financing for multi-family properties such as apartment complexes.

   f. Individual 2 owned and operated Aurora Capital Advisors, identified himself as the principal, and employed others to assist him in brokering and attempting to broker real estate loans.

   g. Patrick Ogiony was employed by and worked for Individual 2 as Managing Director at Aurora Capital.

   h. The Federal National Mortgage Association ("Fannie Mae") was a government sponsored enterprise chartered by Congress with a mission to provide liquidity, stability, and affordability to the U.S. housing and mortgage markets. Fannie Mae worked with certain approved lenders to purchase multi-family loans after the lender originated the loans, leaving the lender with additional money to originate more loans and thus creating liquidity in the mortgage market.

   i. Financial Institution 1 was a commercial real estate financing company based in Uniondale, New York and was approved to originate, sell, and service loans on behalf of Fannie Mae. Entities such as Financial Institution 1 that originated, sold, and serviced loans on behalf of Fannie Mae were known within the commercial and multi-family mortgage industry as "seller-servicers." Seller-servicers originated loans that were then purchased by Fannie Mae. Typically, seller-servicers also serviced the loans they sold to Fannie Mae. Financial Institution 1 was a financial institution, as that term was defined in Title 18, United States Code, Section 20.

j.      Real Estate Service Company 1 was a real estate service company that, among other things, appraised multi-family properties.

k.      A "rent roll" was a document listing, among other things: (1) all the tenants in a multi-family property during a specific time frame; (2) the amount of rent paid by each tenant; and (3) the total rental income for the property during the time frame. The rent roll often also included the date the tenant began occupying the apartment.

## THE MULTI-FAMILY PROPERTY MORTGAGE LENDING PROCESS

2.      Builders of multi-family complexes like Crescendo Lofts fund development with short-term construction loans. A construction loan generally carries a relatively high interest rate and would typically be paid off by a permanent loan with a lower interest rate once the property's occupancy reached a required threshold. Financial Institution 1 required a property to reach 85% occupancy before it would approve the refinancing of a construction loan.

3.      Financial Institution 1 considered various factors when determining whether to refinance a construction loan to a permanent loan, including representations made by potential borrowers concerning cost, value, and income.

## COUNT 1

### (Conspiracy to Commit Wire Fraud Affecting a Financial Institution)

### The United States of America Further Charges That:

1. The allegations contained in the Introduction of this Information are re-alleged and incorporated by reference as if fully set forth herein.

### THE CONSPIRACY

2. Beginning in or before 2016 and continuing to in or about May 2018, the exact dates being unknown to the United States, in the Western District of New York and elsewhere, Defendant, ROBERT "BOBBY" CORRAO, did willfully and knowingly combine, conspire, confederate, and agree with others, known and unknown to the United States, to commit the offense of wire fraud affecting a financial institution in violation of Title 18, United States Code, Section 1343, that is, knowingly, and with intent to defraud, intending to devise and having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice and attempting to do so, to transmit and cause to be transmitted, certain wire communications in interstate commerce, all affecting a financial institution as defined under Title 18, United States Code, Sections 20 and 3293(2), namely Financial Institution 1.

### OBJECTS OF THE CONSPIRACY

3. It was an object of the conspiracy both to induce Financial Institution 1 to issue a mortgage loan to 1502 Niagara, LLC and to induce Fannie Mae to fund or purchase that mortgage loan based on false pretenses, representations and promises.

4

4. It was a further object of the conspiracy to obtain a loan on Crescendo Lofts of an amount greater than 1502 Niagara would have otherwise qualified for and to enrich Defendant and co-conspirators with the inflated loan proceeds generated by the fraudulently obtained loans.

5. It was a further object of the conspiracy to carry out and to execute the above-listed objects for the personal gain, benefit, profit, advantage, and accommodation of Defendant, Individual 1, Individual 2, and Patrick Ogiony.

6. It was a further object of the conspiracy to conceal the conspiracy from detection.

## THE MANNER AND MEANS OF THE CONSPIRACY

7. The objects of the conspiracy were accomplished through the following manner and means, among others:

    a. Individual 1 and Defendant, retained Aurora Capital on behalf of 1502 Niagara to refinance a construction loan on Crescendo Lofts, and to inflate the amount of the refinance loan. At the time Individual 1 and Defendant sought to refinance the construction loan, 1502 Niagara was in the final stages of constructing Crescendo Lofts and had begun renting the apartments.

    b. Defendant and others, known and unknown to the United States, conspired to cause Aurora Capital to provide Financial Institution 1 and Fannie Mae false and fraudulent rent rolls that misstated the occupancy rates of Crescendo Lofts and overstated the monthly income 1502 Niagara earned from Crescendo Lofts.

c. Defendant and others, known and unknown to the United States, conspired to cause Aurora Capital to provide Financial Institution 1 and Fannie Mae false and fraudulent financial statements that misstated 1502 Niagara's net operating income for Crescendo Lofts.

d. Defendant, as well as other co-conspirators, known and unknown to the United States, conspired to cause Aurora Capital to present Real Estate Service Company 1, the company Financial Institution 1 retained to appraise the value of Crescendo Lofts, with false and fraudulent rent rolls and other financial information that inflated the income Crescendo Lofts generated.

### *The 1502 Niagara Loan*

8. As a result of the false and fraudulent false statements submitted to Aurora, Fannie Mae, and Real Estate Service Company 1, Defendant, and others known and unknown to the United States, induced Financial Institution 1 to issue a loan on to 1502 Niagara on or about March 24, 2017, for $7,960,000.00. The loan was subsequently purchased by Fannie Mae. The scheme was executed as follows:

a. On or about February 17, 2016, Defendant sent an email to Patrick Ogiony, "Here are the numbers we are currently using for our Niagara St project. Ideally we would like to pull out closer to 7.5MM at the perm."

b. On or about October 5, 2016, Defendant sent an email to Patrick Ogiony attaching a rent roll showing 18 of the 42 units vacant.

c. On or about October 13, 2016, Patrick Ogiony sent an email to Defendant, Individual 1, and Individual 2, attaching a fraudulent rent roll showing only four of the 42 units vacant, and therefore, inflating the reported rental income. The email stated, "Attached is the Rent Roll 90% leased up and the corresponding Proforma. Please review and I will touch base with you today."

d. On or about December 14, 2016, Defendant and Patrick Ogiony caused Real Estate Service Company 1 to issue a draft appraisal valuing Crescendo Lofts as of November 22, 2016, at $10 million. The appraisal was based on misrepresentations by Defendant and Patrick Ogiony that Crescendo Lofts was 97.6% occupied and had an effective gross income of $792,248.

e. On or about December 21, 2016, Patrick Ogiony emailed Defendant and Individual 1 that Financial Institution 1 was conducting a final walk through of Crescendo Lofts. Ogiony wrote: "We need to see unit 407 that we are saying is Vacant on our Rent Roll and 4 Occupied Units." The fraudulent rent roll identified unit 407 as the only vacant unit. At the time, Defendant was aware that Crescendo Lofts had multiple vacancies.

f. On or about December 29, 2016, Defendant showed unit 407 to the underwriter.

g. On or about January 3, 2017, Patrick Ogiony sent an email to Financial Institution 1 with an updated fraudulent rent roll. The rent roll showed zero vacant units. In fact, as of December 31, 2016, approximately 17 of the 42 Crescendo Lofts units were vacant.

h. On or about March 21, 2017, Individual 1, on behalf of 1502 Niagara, and Defendant, as a key principal of 1502 Niagara, signed and caused the submission to Financial Institution 1 of a Commitment Letter that acknowledged that any material misrepresentation to Financial Institution 1 in connection with 1502 Niagara's loan application would constitute a default. At the time, Defendant knew he had caused material misrepresentations regarding the rent rolls and financial statements of Crescendo Lofts to be submitted to Financial Institution 1.

**All in violation of Title 18, United States Code, Section 1349.**

DATED: Buffalo, New York, April 20, 2022.

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section

BY: _____
SIJI MOORE
Trial Attorney, Fraud Section
U.S. Department of Justice
1400 New York Ave NW,
Washington, DC 20005
(202) 834-2793 (c)
Babasijibomi.moore2@usdoj.gov